**FILED**
2020 Apr-15  PM 02:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

**REGINALD WOODS,**
**Plaintiff, pro se**

**V.**

Action No. 1-20-CV-505-RDP-JHE

[Clerk's Office Only]

**UNITED STATES,**
**[Department of Justice];**
**[Federal Bureau of Prisons] Defendants**

---

### FEDERAL TORT CLAIM under 28 U.S.C. section 1331
### And 18 U.S.C. section 1515;

---

## RESERVATION OF RIGHTS

Petitioner herein asserts his right to be treated as a "novice of the law" with any and all such rights and protections that a "novice" is afforded under federal law.
(See) Haines v. Kerner, 404 U.S. 519 (1972)

## I.    STATEMENT OF JURISDICTION

The Plaintiff moving pro se being a native born American currently in the custody of the Federal Bureau of Prisons lawfully brings this Federal Tort Claim for an injury suffered at the hands of the Federal Bureau of Prisons' Medical Services Department at FCI – Talladega, Alabama which is located within the Geographical boundaries of The United States Court for the Northern District of Alabama. The Plaintiff suffered the injury of a "life threatening infection" that was caused as a direct result of the lack of a "common sense" medical response and the

---

unreasonable delays during an obvious medical emergency, and the additional damages of "cruel and unusual punishment" during the emergency room visit. And lastly, violations of my "due process rights" during the administrative remedy process at the Regional and Central Office level of the appeal by means of "machination" and "misrepresentation" of facts in an attempt to extend the "time frame" of the appeal through guise and manipulation and thus committing acts of Obstruction of Justice.    (See) 18 U.S.C. section 1515

## II.    LEGAL STANDARD FOR INADEQUATE MEDICAL CARE

Adequate medical care is a non-negotiable requirement of the Eighth Amendment of the Constitution that demands that such adequate care is vital to retaining lawful custody over a living man, especially a legally disabled man who is protected under federal law by the Americans with Disabilities Act.

(See) Estelle v. Gamble, 429 U.S. 97, 102, 104 (1976)

(See) McElligott v. Foley, 182 F.3d 1248, 1252, 1256-57 (11th Cir. 1999).

Further, it is well settled under federal law *"that **a serious medical need exists** **if the failure to treat the need could result in further injury or unnecessary** **and wanton infliction of pain"** See Estelle, 429 U.S. 97, 104 (1976) supra*

It is also well settled that repeated delays in a doctor seeing a patient with constant severe pain, continuing of ineffective medications could constitute

deliberate indifference, especially when doctors and prison officials can clearly "see the injury" [which means they have knowledge of the injury] and the inherent risk involved in delaying the proper treatment which would require sending the prisoner to an appropriate specialist [such as an Eye Surgeon in this case] and prison doctors decided to ignore the obvious risk and chose not to refer the injured prisoner to a doctor who is qualified to fully assess and treat the injury can constitute deliberate indifference. **In other words, they can see the "substantial risk" involved and decide to knowingly "gamble" with the health and as in this instant case the actual "life" of the prisoner.** Sometimes even far more sinister motives can play a part in the delays of the proper medical treatment with prisoners such as not treating a prisoner due to the financial costs involved or [as in this case] not making the attempt to declare a legitimate "medical emergency" due to bad weather or a lack of staff, thus asking a prisoner to continue to languish with an obvious injury and severe pain. In particular, "systemic deficiencies in staffing, facilities, or procedures [which] make unnecessary suffering inevitable" may support a finding of deliberate of indifference. Such failures [as not making a "qualified" eye doctor available who is able to assess the need for an emergency surgical procedure] can constitute a tort. Clearly, none of the FCI – Medical staff involved possessed the "qualifying" knowledge of being a retina specialist to make the

proper determination of whether or not my condition required an immediate and corrective surgery to protect my right eye from developing a severe infection. Clearly, the FCI – Talladega Medical Staff chose to ignore the risk and I suffered a "life threatening infection" as a direct result of this collective decision of the Federal Bureau of Prisons.

(See) **Harris v. Thigpen, 941 F. 2d 1495, 1505 (11th Cir. 1991)**

(See) **Farmer v. Brennan, 511 U.S. 825, 837 (1994)** "ignored risk for injury."

(See) **West v. Keve, 571 F. 2d 158, 162 (3rd Cir. 1978)**

(See) **Brown v. Hughes, 894 F. 2d 1533, 1538 (11th Cir. 1990)**

(See) **Howell v. Evans, 922 F. 2d 712, 723 (11th Cir. 1991)**

(See) **Hill v. Dekalb Co. Youth Detention Ctr., 40 F. 2d 1176 (11th Cir. 1994)** "ignored a condition so obvious even a lay person could easily recognize the need."

## The actions of the Medical Staff at FCI – Talladega were clearly an act of "deliberate indifference" of my medical needs for the following reasons:

- The Federal Bureau of Prisons clearly ignored an "immediate need" and failed to recognize the fact that NO STAFF MEMBER at FCI – Talladega was qualified to perform an evaluation of a previous retina eye surgery and that there was a need to get me to a hospital where a Retina Specialist could be called in to properly assess the emergency.
- Failing to provide a proper treatment for a diagnosed "medical condition."
- Failing to investigate enough to make an informed judgement.
- Delaying treatment.
- Interfering with access to "Qualified" medical treatment.
- Making medical decisions based on non-medical factors; and
- Making a "medical judgement" so bad it's not medical.

### III.    [sworn] STATEMENT OF CLAIM FOR "INADEQUATE MEDICAL CARE" under 28 U.S.C. section 1331

1. On 1/16/2018, I was awaken from my sleep with what felt like a ripping or popping sensation that was very violent in nature and after fully gaining consciousness I felt something scratching against the inside of my eyelid.

2. On 1/16/2018, at approximately 7:00 a.m. I arrived at "sick-call" where I filled a form and waited to be seen by MLP – Mourtada who examined me and detected that there was indeed a stitch or suture visible and that it had impaled through my eye from the inside to the outside.  MLP – Mourtada also notes that I was in visible discomfort and pain. Vision was 20/70. According to Dr. Morris of the Retina Specialists of Alabama my vision has a baseline of 20/40 in my right after my 2015 lens replacement surgery [which] the ruptured stitch is related.

3. Due to the obvious pain I was proscribed 2 Tylenol w/codeine tablets [MLP Mourtada] three times a day for the pain, **but I was never taken to an eye doctor for an examination.**

4. I was also proscribed an eye-drop, **but I was not treated immediately with any dose [for the pain or infection risk] whatsoever**. The eye-drop was to be picked-up at the pharmacy as soon as it is made available.

5. Later on that evening [on 1/16/18], I started to experience severe swelling and pain in my head, especially around my right eye. **Clearly, the eye-drop was not working** It was late and no one from medical would be available until the next morning, so I tried using ice to control the swelling until the next morning with limited success.

6. **On 1/17/18 it snowed in Talladega, and there were a limited number of staff available** so instead of the normal "sick-call" I had walk up to medical and make Dr. Holbrook aware of the rapid "down-turn" of my medical condition and that I had experienced "severe" swelling the previous night and that I was now extremely "light sensitive" and needed to be treated for my damaged eye.

7. Dr. Holbrook noted [on 1/17/18] during his examination that he was unable to visualize the retina in my right eye, and that the suture or stitch now appears to be protruding about 1/16 to 1/8 inch from the eye from the inside.

8. No treatment was administered by Dr. Holbrook during the examination, but another ointment was ordered that would have to be picked up later from the Pharmacy whenever it becomes available, **but again I was never taken to an eye doctor for an examination or treatment.**

9. That was the second time that I had left medical without receiving nothing but a proscription that must be picked up at a later time even though I was clearly in pain and the stitch or suture was clearly protruding 1/8 inch from my eye. I was sent back to my housing unit to continue my pain and suffering.

10. After my visit with Dr. Holbrook the pain and pressure continued to build on my right eye throughout the evening, so I returned to the Lt.'s Office [on 1/17/18] **after the 4:00 p.m. count** was cleared and reported my extremely worsened condition to Lt. Dourerty who [after examining my right] sent me directly over to medical where Nurse Fred Honer was working the insulin pill-line.

11. At the conclusion of the "pill line" I was examined by Nurse Honer and I notified him that it felt like my eye was about to explode and I felt like my retina was ripping itself apart and possibly detaching with a very sharp tearing sensation.

12. Nurse Honer reported that my vision went from 20/70 to 20/200 in a few hours!

13. Nurse Honer called to UAB Hospital and reported my symptoms to Dr. Warren who told him to get me admitted at the Callahan Eye Foundation Hospital as soon as possible!

14. I was then processed for an Emergency Trip to the UAB Callahan Eye Hospital, but was initially taken to the wrong Hospital!

15. I sat inside of one of UAB's other Hospital Emergency Room [on 1/17/18] near a rear elevator fully shackled with a "black-box" restraint on for about 6 hours, I was seen by the emergency room physician who "notified" the staff escorts that we were at the wrong hospital and that we need to go to the Callahan Eye Foundation and that they will be expecting our arrival. After, around four hours [45 minute ride and 3:15 waiting by an elevator] Lt. Sanders [then Officer Sanders] actually asked Officer Taft to remove the "black box" to allow for the circulation to return to my body due to my medical condition of having "sickle cell disease" but Officer Taft refused.

16. I was examined [on 1/18/18] around 2:00 a.m. by the Emergency Room Physician at the Callahan Eye Hospital who recorded that my vision had worsened yet again going from 20/200 to 20/400!

17. I was "immediately" scheduled for an emergency surgery to be formed later on in the morning of 1/18/18.

18. I was fully admitted and assigned a room on the third floor of the Eye Hospital.

19. The surgery went well, but the infection was so severe by the time I was treated that I was kept in the Callahan Eye Hospital for about three more additional days to administer I.V. antibiotics as well as an hourly cocktail of three more antibiotic eye drops which were given to me every single hour on the hour without any exceptions!

20. As a result of being treated around the clock in such a manner I was extremely sleep deprived by the time I was released from the Hospital.

21. This infection was completely avoidable, if I had been properly treated at the institution by recognizing my eye injury as an emergency from the beginning instead of waiting until my eye was about to explode from the pressure of an infection to send me to the hospital.

22. The FCI – Talladega medical staff have a horrendous track record of delays and ineptness over the years, **in fact on a medical referral they had me housed in Y- Dorm at the community custody camp prison next door! If**

**you can't even tell me what prison I am being housed…how can I trust your medical judgement?    (See) Attachment - B**

23. During the administrative remedy process someone within the Regional Office attempted on two separate occasions [during a IFRP complaint and this Medical Care complaint] within a two day time frame to subvert my administrative remedies by "misrepresentation of facts" claiming that both packages did not contain a properly filed BP-9 and a Warden's Response.

24. After receiving both packages, I immediately alerted my Unit Team [Unit Manager Gillman] and the Warden's Executive Assistant [Ms. Benton] to the scheme and the claim that certain documents where missing when in fact they were indeed within the packages that were "rejected" by the Region.

25. Unit Manager Gillman witnessed acknowledged that both packets were fully intact and did indeed already contain the requested BP-9 materials.

26. I went on to complete the Administrative Remedy Process with the Central Office who decided to "defend" the actions of the Atlanta Regional Office without any hesitation or conducting an investigation of my claims by issuing a rejection. The Supreme Court has clearly held that such tactics as those used by the Federal Bureau of Prisons count as a "completed" Administrative Remedy Process. **(See) Ross v. Blake, 136 S.Ct. 1850 at 1856 (2016), and Geobert v. Lee Co., 510 F. 3d 1312, 1323 (11th Cir. 2007)** "When prison officials play hide and seek with administrative remedies…they are not available."

27. I am legally disabled under federal laws having a known condition of sickle cell disease for which I was receiving SSI Disability payments before being taken into the custody of the Federal Bureau of Prisons.

28. The "life threatening infection" that I suffered could have been avoided.

29. This injury caused me a tremendous amount of pain and potentially affects my ability of work going forward in life.

## IV.    REQUEST FOR A CIVIL JURY AWARD

The Plaintiff respectfully requests for a jury trial to settle this dispute over the claims contained within this currently pending Federal Tort Claim and the Plaintiff herein concedes the authority to this Civil Jury to award <u>above</u> or <u>below</u> the total amount due requested.

## V.    RELIEF SOUGHT & TOTAL AMOUNT DUE

- **Torts for Acts of Deliberate Indifference** the blatant disregard of an obvious injury [puncture of the eye], AND…the total disregard of the risk that an infection could arise from a punctured eye.

- **Torts for Acts of Unreasonable Delays** in treating the injury by getting me to the proper type of Doctors who could actually treat my injury.

- **Torts for Acts of Cruel and Unusual Punishment** leaving me "black-boxed" which clearly added to me suffering extreme pain and lack of blood flow which is hazardous to my pre-existing condition of being a sickle cell patient for over 6 hours during a Medical Emergency.

- **Torts for Injury** for the "life threatening infection" caused from the repeated delays in reasonable medical treatment at the hands of the FCI – Talladega's Medical Staff.

- **TOTAL ACCOUNTING OF THE INITIAL CLAIM = $280,000.00**

- **Plus Treble Damages for Acts of "Obstruction of Justice"** under 18 U.S.C. section 1515 violating my Due Process Rights during the Administrative Remedy Process. [Machination and Misrepresentation].

## PLUS TREBLE DAMAGES: [for Obstruction of Justice].

## $280,000.00 x 3 = $840,000.00

Plus an additional award to compensate for Legal Research, Mental Exertion, Emotional Stress and the actual Preparation of Legal Materials + Filing Fees:

Legal Fees are 400 hours x $100.00 per hour = [+]**$40,000.00**

## GRAND TOTAL OF CLAIM = $880,000.00

*"Eight-Hundred-And-Eighty-Thousand-Dollars-And-Zero-Cents"*

1. **Plaintiff requests the grand total of claim $880,000.00 be awarded as compensatory damages.**

2. **Plaintiff requests as "an order from this Court" declaring that the defendants acted in violation of the United States Constitution.**

## VI.    LIST OF WITNESSES and "notice of intent to summon."

1. <u>Lt. Dourerty of FCI -Talladega</u> ~ who witnessed the extreme nature of the damage that my eye had sustained as result of the collective decisions of the medical to delay adequate medical treatment until a massive infection "threatened my life" which common sense dictates, clearly required the knowledge and expertise of a retina specialist based on my medical history of having undergone previous surgeries to both eyes with retina specialist Dr. Morris performing both procedures.

2. <u>Lt. Sanders of FCI - Talladega</u> ~ who also witnessed the amount of damage that my eye had sustained as a result of the repeated and systemic delays. Lt. Sanders [Officer Sander at the time of the injury sustained] also made the observation of my intense suffering during this emergency and requested to his fellow officer [Officer Taft] that the black-box should be removed for just a moment to allow for the circulation to return to my body and having been confined by the black-box for over six hours during an extreme emergency situation, but Officer Taft made the decision to refuse to allow consideration for my known disability of having sickle cell disease which requires good circulation of the blood-flow throughout the body.

3. <u>MLP Mourtada of FCI – Talladega</u> ~ who conducted the very first examination of my eye after the initial puncture of the suture which pierced through my eye from the inside-out about 1/8 of an inch, but failed to request for an "Emergency Room" visit or an "Emergency visit to an Eye Doctor."

4. <u>MD Holbrook of FCI – Talladega</u> ~ who conducted the second examination at the institution after the "infection" started the swelling in my head, but he too did not order an "Emergency Room Visit" or and "Emergency Eye Doctor consultation or examination" and Dr. Holbrook also failed to administer an adequate treatment that was required with the amount of damage that he was clearly seeing within my eye during the examination Dr. Holbrook noted that the pain and stitch were both clearly visible. Most importantly, Dr. Holbrook noted that he was no longer able to visualize the retina! Clearly, this was worthy of at the very least an "Emergency Room Visit" and again FCI – Talladega's medical staff "recognized" that I was suffering from a serious medical need, but chose to

ignore the serious risks for further damage to occur and as a result inflicted further pain and suffering.

5. **RN Fred Honer of FCI – Talladega [currently retired]** ~ who made the third examination and noted that my vision had drastically gone from 20/70 down to 20/200 in a matter of hours. <u>RN Fred Horner was the only FCI – Talladega Medical Staff who decided for some outside help</u> and Nurse Horner called to UAB Medical in Birmingham and talked with Dr. Warren who told [Nurse Horner] the dire nature of my condition based on his initial assessment in relation to my symptoms and [Dr. Warren] told Nurse Horner "I don't care if you have to land a helicopter get Mr. Woods here right now!"

6. **Unit Manager Gillman** ~ witnessed the condition of the Administrative Remedy packages both being complete with the required documentation and the bogus demands from the Regional counsel that packages did not contain the materials and that I should re-file again. Unit Manager Gillman witnessed the Regional Office's attempts at playing "hide and seek" with my Administrative Remedy Process.

7. **Camp Administrator Ms. Benton [former Warden's Executive Assistant]** ~ I was referred to [then Warden's Executive Assistant] Ms. Benton by Unit Manager Gillman after he witnessed the condition of my Administrative Remedy Packages both being in tact and the bogus demands for the for the documents to be replaced and that I needed to re-file and start the process all over again. Ms. Benton contacted the Region about the erroneous notion that the packages were not in tact and they still wanted me to start the process all over again. Clearly, the Regional Office wanted to lure me into their business as usual game of "hide and seek."

## OATH OF STATEMENT

All of the statements of the Plaintiff contained above carry equal standing as a "notarized affidavit" whereas any and all references and statements are true, complete and correct and are not meant to mislead.  28 U.S.C. section 1746

Date: 4/13/2020

## CERTIFICATE OF SERVICE

The Plaintiff did serve this RESPONSE on the Clerk of the Court as well the Defendants (via) the Federal Bureau of Prisons Regional Counsel's Office [located in Atlanta, Georgia] on the date listed below at the FCI – Talladega Mailroom (via) certified mail.  All of the above is true, complete and correct.

28 U.S.C. section 1746

Date: 4/13/2020

# ATTACHMENT – A

# "PROOF"

## OF EXHAUSTION OF
## ADMINISTRATIVE REMEDIES



**U.S. Department of Justice**

Federal Bureau of Prisons

*Southeast Regional Office*

---

*3800 Camp Creek Pkwy., SW., Bldg. 2000*
*Atlanta, Georgia 30331-6226*

**CERTIFIED MAIL**
7011 1150 0001 5453 4990

February 3, 2020

Reginald Woods
Reg. No. 20521-001
FCI TDG
P.O. Box 1000
Talladega, AL 35160

Re: **Administrative Tort Claim Number TRT-SER-2019-06683**

Dear Claimant:

Your claim has been considered for administrative settlement under the Federal Tort Claims Act
(FTCA), Title 28 United States Code (U.S.C.) § 2672, et seq., and the authority granted by Title
28 Code of Federal Regulations (C.F.R.) § 0.172. Section 2672 of the FTCA delegates to each
federal agency the authority to consider, determine, and settle any claim for money damages
against the United States for loss of personal property or injury caused by the negligent or
wrongful act or omission of any employee of the agency while acting within the scope of his
office or employment.

You allege that on January 17, 2018, you suffered a life and vision threatening infection that
resulted in emergency surgery due to unreasonable delays of the health services department. As a
result, you allege that you suffered bodily harm. You seek $280,000 in damages.

We have reviewed your claim along with records and reports from appropriate staff members.
Based on our investigation, there is no evidence indicating you suffered a loss or injury caused
by the negligent or wrongful act or omission of any Bureau of Prisons employees acting within
the scope of his or her employment. Your claim is denied. If you are not satisfied with this
determination, you may file suit in the appropriate United States District Court not later than six
(6) months after the date of mailing of this notification.

Sincerely,

Vincent Shaw
Deputy Regional Counsel

cc:    Warden, FCI Talladega
       ATTN: FTCA Coordinator

**U.S. Department of Justice**

Federal Bureau of Prisons

*Southeast Regional Office*

*Building 2000*
*3800 Camp Creek Parkway, S.W.*
*Atlanta, Georgia 30331-6226*

Official Business

U text 1



CERTIFIED MAIL™

,7011 1150 0001 5453

02 1P          $ 004.05
0000007430    FEB 10 2020
MAILED FROM ZIP CODE 30331

BA

01-001L

Reginald Woods
Reg. No. 20521-001
FCI TDG
P.O. Box 1000
Talladega, AL 35160

35161-100000

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY

DATE: MAY 14, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TALLADEGA FCI

TO  : REGINALD WOODS, 20521-001
      TALLADEGA FCI    UNT: UNIT G    QTR: B01-012L

ADDITIONAL TIME IS NEEDED TO RESPOND TO THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 973771-F1
DATE RECEIVED  : APRIL 9, 2019
RESPONSE DUE   : MAY 19, 2019
SUBJECT 1      : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2      :

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Woods, Reginald          20521-001     Beta-A      TDG
    LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A- INMATE REQUEST**

This is a Formal "Bivens" complaint for 8th Amend. violations of <u>unreasonable delays</u> and <u>deliberate indifference</u> which led to a permanent injury to the optic Nerve in my right eye. (see) McElligott v. Foley, 182 F. 3d 1248, 1252, 1256-57 (11th Cir. 1999) (see) Johnson v. Karnes, 398 F.3d 868, 875-76 (6th. Cir. 2005) This is a notice of my intent to file a Federal Tort Claim for this injury.

3-26-19
DATE          Mr. Reginald Woods
                 SIGNATURE OF REQUESTER

**Part B- RESPONSE**

Recived
04 09 2019
FCI Talladega

_____       _____
DATE                   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**SECOND COPY: RETURN TO INMATE**          CASE NUMBER: _____

                                       CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
         LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____       _____
DATE                   RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN     PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

RECEIPT - ADMINISTRATIVE REMEDY

DATE: APRIL 10, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      TALLADEGA FCI

TO  : REGINALD WOODS, 20521-001
      TALLADEGA FCI     UNT: UNIT G    QTR: B01-012L

THIS ACKNOWLEDGES THE RECEIPT OF THE ADMINISTRATIVE REMEDY REQUEST
IDENTIFIED BELOW:

REMEDY ID      : 973771-F1
DATE RECEIVED  : APRIL 9, 2019
RESPONSE DUE   : APRIL 29, 2019
SUBJECT 1      : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2      :

```
REGINALD WOODS, 20521-001
TALLADEGA FCI     UNT: UNIT G     QTR: B01-012L
565 EAST RENFROE ROAD
TALLADEGA,   AL 35160
```

Received
5-29-19

Administrative Remedy No. 973771-F1
Part B - Response

This is in response to your Request for Administrative Remedy
No. 973771-F1, received on April 9, 2019, wherein you claim a
delay in medical care and deliberate indifference.  As relief,
you request compensation for damage to your eye.

A review of records indicates you have received all recommended
treatment ordered by the eye specialists.  Furthermore, a review
of your last optometry visit shows no change in your vision.

Per Program Statement 1320.06, Federal Tort Claims Act, dated
August 1, 2003, if you are seeking monetary damages, inmates may
obtain a "Claim for Damage, Injury, or Death and Supplemental
Instruction" (SF-95) form from their respective Unit Team.  It
is the responsibility of the inmate to complete the S-95 and
forwad it to the Regional Office in the Region where the claim
arose.  For claims arising at FCI Talladega, the completed SF-95
must be mailed to the following Consolidated Legal Center:

Regional Counsel
Bureau of Prisons
Southeast Regional Office
3800 Camp Creek Parkway, SW
Building 2000
Atlanta, Georgia  30331

Accordingly, your response for administrative remedy is for
informational purposes only.  In the event you are not satisfied
with this response and wish to appeal, you may do so within 20
calendar days from the date of this response by submitting a
form BP-230(10) to the Regional Director, Southeast Regional
Office, 3800 Camp Creek Parkway, SW, Building 2000, Atlanta, GA
30331-6226.

_____          _____5/22/19_____
M. Joseph, Acting Warden           Date

**Zheadric Watters - Re: Inmate Woods 20521-001**

**From:** Celia Hansen
**To:** Watters, Zheadric
**Date:** 3/25/2019 10:46 AM
**Subject:** Re: Inmate Woods 20521-001

He is being treated per the plan of care that was determined by the specialist and Dr. Holbrook. He is being monitored and was instructed to return to medical if symptoms return. He has had all appointments and procedure that have been ordered.

The awarding of money is not determined through the administrative process. He will need to file a tort claim or an actual Bivens through the court system.

Celia Hansen, RN
Health Services Administrator
FCI Talladega
256-315-4124
chansen@bop.gov

>>> Zheadric Watters 3/25/2019 8:51 AM >>>

Z. Watters
Correctional Counselor
Federal Correctional Institution
565 East Renfroe Road
Talladega, Al 35160
Ph.256-315-4100 Ext 4283
zwatters@bop.gov
Anybody can be average. It take hard work to be GREAT

[Emphasis added] Response to my Request for a Informal Resolution.

Attachment - A

TRULINCS 20521001 - WOODS, REGINALD - Unit: TDG-B-A

----------------------------------------------------------------------------------------

FROM: 20521001
TO: Health Services
SUBJECT: ***Request to Staff*** WOODS, REGINALD, Reg# 20521001, TDG-B-A
DATE: 03/16/2019 12:11:43 PM

To: Clinical Director - Ms. Hanson
Inmate Work Assignment: Unicor Office

"THIS IS A (FORMAL) "BIVENS ACTION" COMPLAINT  AND NOTICE OF (Federal) TORT CLAIM FOR AN INJURY"
for the following: FCI - Talladega's Health Services department is responsible for permanent damage and acute vision loss in
my right eye as a direct result of "unreasonable delays" in treatment and failure to follow the orders of the Retina Specialists of
Alabama. I now have a permanent injury of scar tissue resting on the optic nerve of my right from the gross negligence and
borderline arrogance of this Health Service Department.
Search your records and you will find what I already have copies of including various emails to staff alerting them of
seriousness of the need for the recommended surgery that was medically ORDERED by the Retina Specialist of Alabama
going back to June 2014, where my OPTIC NERVE was completely SCAR FREE; consequently and because of incompetence
or "willful acts" to lessen the related costs of the procedure; I now have permanent vision loss as well as the injury of having
SCAR TISSUE resting on my OPTIC NERVE in my right that can not be surgically removed without risking total blindness as a
direct result of the delays caused directly by Health services.
I will be seeking compensation for these injuries.
Thank you for your time.

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | | |
|---|---|---|---|---|---|---|
| Inmate Name: | WOODS, REGINALD | | | | Reg #: | 20521-001 |
| Date of Birth: | ▊▊▊▊▊ | Sex: | M | Race: BLACK | Facility: | TDG |
| Note Date: | 01/19/2018 11:24 | Provider: | Holbrook, William MD/CD | | Unit: | B01 |

Admin Note - Community Hospital Report encounter performed at Health Services.
**Administrative Notes:**

    **ADMINISTRATIVE NOTE  1**       **Provider:** Holbrook, William MD/CD

        I spoke to the RN, and she reports that the patient went to surgery yesterday morning, and had a vitrectomy with antibiotic wash. He remains in the hospital secondary to the infection, and remains in the hospital on IV antibiotics.

**Copay Required:** No        **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Holbrook, William MD/CD on 01/19/2018 11:32

# Bureau of Prisons
# Health Services
# Clinical Encounter

Inmate Name: WOODS, REGINALD                                          Reg #: 20521-001
Date of Birth:                          Sex:  M    Race:  BLACK       Facility: TDG
Encounter Date: 01/17/2018 18:14        Provider: Honer, Fred RN      Unit:  B01

Nursing - Sick Call Note encounter performed at Health Services.

## SUBJECTIVE:

**COMPLAINT 1**          **Provider:** Honer, Fred RN

**Chief Complaint:** Eyes/Vision Problems
**Subjective:** Pt C/O a different feeling in the right eye, pain and a loss of vision.
**Pain:** Yes
**Pain Assessment**
  **Date:** 01/17/2018 18:17
  **Location:** Eye-Right
  **Quality of Pain:** Pressure-like
  **Pain Scale:** 9
  **Intervention:** to eye MD
  **Trauma Date/Year:**
  **Injury:**
  **Mechanism:**
  **Onset:** 1-5 Hours
  **Duration:** 1-5 Hours
  **Exacerbating Factors:** None
  **Relieving Factors:** None
  **Comments:**

## OBJECTIVE:

## ASSESSMENT:

Eye - Visual Acuity Change
CAO X 3 and situation. Skin warm and dry. Pt C/O a feeling of detachment his right eye, a feeling of pressure like pain and a significant reduction in vision in the past few hours. Pt seen by the CD earlier and then the pt had a vision of 20/70 in his right eye, My test in the past half hour had a vision of greater than 20/200. Per the MD, Dr Warren, at UAB and the CD the pt is to go to the UAB eye hospital. Pt to go via BOP vehicle.

## PLAN:

**New Consultation Requests:**

| Consultation/Procedure | Target Date | Scheduled Target Date | Priority | Translator | Language |
|---|---|---|---|---|---|

# Bureau of Prisons
## Health Services
## Cosign/Review

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | WOODS, REGINALD | | | Reg #: | 20521-001 |
| Date of Birth: | | Sex: | M | Race: | BLACK |
| Encounter Date: | 01/17/2018 18:14 | Provider: | Honer, Fred RN | Facility: | TDG |

**Cosigned by Holbrook, William MD/CD on 01/18/2018 08:23.**

Inmate Name:   WOODS, REGINALD                                              Reg #:    20521-001
Date of Birth: ███████████                Sex:    M    Race:  BLACK         Facility:  TDG
Encounter Date:  01/17/2018 18:14          Provider:  Honer, Fred RN        Unit:      B01

Emergency Room                      01/17/2018    01/17/2018          Urgent          No
     **Subtype:**
          Emergency Room
     **Reason for Request:**
          Sudden onset of pain and sudden significant reduction in visual acuity.  UAB eye hospital.

**Disposition:**

     Transfer to Local Hospital

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 01/17/2018 | Counseling | Access to Care | Honer, Fred | Verbalizes Understanding |

**Copay Required:** No              **Cosign Required:** Yes
**Telephone/Verbal Order:**  Yes    **By:**  Holbrook, William MD/CD
**Telephone or Verbal order read back and verified.**

Completed by Honer, Fred RN on 01/17/2018 18:29
Requested to be cosigned by  Holbrook, William MD/CD.
Cosign documentation will be displayed on the following page.

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: WOODS, REGINALD | | | Reg #: | 20521-001 |
| Date of Birth: ▓▓▓▓▓▓ | Sex: M Race: BLACK | | Facility: | TDG |
| Encounter Date: 01/16/2018 13:56 | Provider: Mourtada, Mounir MLP | | Unit: | B01 |

Mid Level Provider - Sick Call Note encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**        **Provider:** Mourtada, Mounir MLP

**Chief Complaint:** Eyes/Vision Problems

**Subjective:**    Patient c/o severe right eye pain since this morning. Has a retinal implant on that eye few years ago. Denies trauma or visual problem. feels like something is sticking him against the inside of the eyelid.

**Pain:**    Yes

**Pain Assessment**

| | |
|---|---|
| **Date:** | 01/16/2018 13:57 |
| **Location:** | Eye-Right |
| **Quality of Pain:** | Pins and Needles |
| **Pain Scale:** | 7 |
| **Intervention:** | see note |
| **Trauma Date/Year:** | |
| **Injury:** | |
| **Mechanism:** | |
| **Onset:** | 1-5 Hours |
| **Duration:** | 1-5 Hours |
| **Exacerbating Factors:** | none |
| **Relieving Factors:** | none |
| **Comments:** | |

**OBJECTIVE:**

**Exam:**

   **Eyes**

   **General**
      Yes: PERRLA

   **Periorbital/Orbital/Lids**
      Yes: Normal Appearing

   **Conjunctiva and Sclera**
      Yes: Within Normal Limits

   **Cornea and Lens**
      Yes: Fluorescein Uptake R
      No: Fluorecein Staining R

**Exam Comments**
   IOP OS = 12, OD = 14
   There is a pinpoint fluorescein reuptake
   No decrease in visual acuity.

**ASSESSMENT:**

   Other eye problems, V41.1 - Current

| Inmate Name: | WOODS, REGINALD | | | Reg #: | 20521-001 |
|---|---|---|---|---|---|
| Date of Birth: | ▮▮▮▮▮▮ | Sex: M | Race: BLACK | Facility: | TDG |
| Encounter Date: | 01/17/2018 09:48 | Provider: | Holbrook, William MD/CD | Unit: | B01 |

sclera of the right eye.

VA right 20/70 left 20/40

**ASSESSMENT:**

Disorder of eye, unspecified, 379.90 - Current - *Pain and stitch visible.*

**PLAN:**

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Acetaminophen/Codeine 300/30 MG Tablets | 01/17/2018 09:48 | 2 tabs Orally - three times a day x 3 day(s) Pill Line Only |

    **Indication:** Disorder of eye, unspecified
    **Start Now:** Yes
        **Night Stock Rx#:**
        **Source:** Sub Stock Location
        **Admin Method:** Pill Line
        **Stop Date:** 01/20/2018 09:47
        **MAR Label:** 2 tabs Orally - three times a day x 3 day(s) Pill Line Only
        **One Time Dose Given:** No

| | Neomycin/Poly B/Hydrocort Ophth Susp | 01/17/2018 09:48 | 1 drop In Affected Eye(s) Right Eye -four times a day x 7 day(s) |
|---|---|---|---|

    **Indication:** Disorder of eye, unspecified
    **Start Now:** Yes
        **Night Stock Rx#:**
        **Source:** Sub Stock Location
        **Admin Method:** Self Administration
        **Stop Date:** 01/24/2018 09:47
        **MAR Label:** 1 drop In Affected Eye(s) Right Eye -four times a day x 7 day(s)
        **One Time Dose Given:** No

**Disposition:**

Follow-up at Sick Call as Needed

**Patient Education Topics:**

| Date Initiated | Format | Handout/Topic | Provider | Outcome |
|---|---|---|---|---|
| 01/17/2018 | Counseling | Access to Care | Holbrook, William | Verbalizes Understanding |

**Copay Required:** No      **Cosign Required:** No
**Telephone/Verbal Order:** No

Completed by Holbrook, William MD/CD on 01/17/2018 10:17

# Bureau of Prisons
# Health Services
# Clinical Encounter - Administrative Note

| | | | | | |
|---|---|---|---|---|---|
| Inmate Name: | WOODS, REGINALD | | | Reg #: | 20521-001 |
| Date of Birth: | | Sex: M | Race: BLACK | Facility: | TDG |
| Note Date: | 01/17/2018 10:24 | Provider: | Holbrook, William MD/CD | Unit: | B01 |

Admin Note - Orders encounter performed at Health Services.
**Administrative Notes:**

**ADMINISTRATIVE NOTE   1**        **Provider:** Holbrook, William MD/CD
Ophthalmic medication changed secondary to meds not being in stock.

**New Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Neomycin/Poly B/Dexameth Ophth Oint | 01/17/2018 10:24 | 1/2 inch  In Affected Eye(s) Right Eye -four times a day x 7 day(s) |

**Indication:** Old retinal detachment, total or subtotal
**Start Now:** Yes
**Night Stock Rx#:**
**Source:** Sub Stock Location
**Admin Method:** Self Administration
**Stop Date:** 01/24/2018 10:23
**MAR Label:** 1/2 inch  In Affected Eye(s) Right Eye -four times a day x 7 day(s)
**One Time Dose Given:** No

**Discontinued Medication Orders:**

| Rx# | Medication | Order Date | Prescriber Order |
|---|---|---|---|
| | Neomycin/Poly B/Hydrocort Ophth Susp | 01/17/2018 10:24 | 1 drop  In Affected Eye(s) Right Eye -four times a day x 7 day(s) |

**Discontinue Type:**    When Pharmacy Processes
**Discontinue Reason:** discontinue
**Indication:**

**Copay Required:** No        **Cosign Required:** No
**Telephone/Verbal Order:**   No

Completed by Holbrook, William MD/CD on 01/17/2018 10:30

# Bureau of Prisons
## Health Services
## Clinical Encounter

| | | | | |
|---|---|---|---|---|
| Inmate Name: WOODS, REGINALD | | | | Reg #: 20521-001 |
| Date of Birth: ▮▮▮▮▮▮ | | Sex: M  Race: BLACK | | Facility: TDG |
| Encounter Date: 01/17/2018 09:48 | | Provider: Holbrook, William MD/CD | | Unit: B01 |

Physician - Evaluation encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**      **Provider:** Holbrook, William MD/CD

**Chief Complaint:** Eyes/Vision Problems

**Subjective:** Patient with h/o right lens replacement in 2015. He developed a sharp pain in his eye about 2 days ago in the right eye. It awoke him from sleep. He was seen yesterday at sick call and an ophthalmology consult was made for possible suture rupture. He states that last night he developed some swelling around the eye, but it went down with ice.

**Pain:** Yes

**Pain Assessment**

| | |
|---|---|
| **Date:** | 01/17/2018 09:50 |
| **Location:** | Eye-Right |
| **Quality of Pain:** | Sharp |
| **Pain Scale:** | 9 |
| **Intervention:** | tylenol |
| **Trauma Date/Year:** | |
| **Injury:** | |
| **Mechanism:** | |
| **Onset:** | 1-2 Days |
| **Duration:** | 1-2 Days |
| **Exacerbating Factors:** | changing light conditions that make his pupil contract or dilate |
| **Relieving Factors:** | ice |
| **Comments:** | |

**ROS:**

**HEENT**
   **Eyes**
      Yes: Pain, Redness

**OBJECTIVE:**

**Exam:**
   **General**
      **Appearance**
         Yes: Appears Well
         No: Appears Distressed
   **Eyes**
      **General**
         Yes: PERRLA, Extraocular Movements Intact
      **Fundus Exam**
         No: Grossly Normal Retina

**Exam Comments**

Unable to visualize the retina. Patient with a white stitch appearing substance that protrudes about 1/16 - 1/8 inch from the lateral aspect of the right eye at the outer border of the iris. It is white in color. He has erythema that is mild over the

Feb 02 2018 02:16PM CEH HIM 2053258682                        page 2

20521-001



## CALLAHAN EYE HOSPITAL

**NAME:** WOODS, REGINALD      **DOB:** ▮▮▮▮▮      **MRN:** M0272129
**DATE OF SERVICE:** 01/18/2018      **ACCT #:** V001522449

Is this first surgical procedure for patient during this hospitalization?

Was this treatment due to an accident?

If yes, date of accident:

Type and location of accident:

**IS THIS A RESULT OF A COMPLICATION OF A PREVIOUS PROCEDURE:**

**PREOPERATIVE PRINCIPAL DIAGNOSES:**
1. Endophthalmitis, right eye
2. Corneal ulcer, right eye

**COMPLICATIONS:** None

**POSTOPERATIVE PRINCIPAL DIAGNOSES:**
1. Endophthalmitis, right eye
2. Cornea. ulcer, right eye

**SURGEON:** Andrew McFarland, MD

**ASSISTANT:**

**SUPERVISOR:**

**ANESTHETIST/ANESTHESIOLOGIST:**

**TYPE OF ANESTHESIA:** LMA with sub-Tenon's block

**NAME OF EVERY PROCEDURE PERFORMED:**
1. A 25-gauge pars plana vitrectomy, right eye
2. Anterior chamber washout, right eye
3. Intravitreal vancomycin 0.1 cc, right eye
4. Intravitreal ceftazidime 0.1 cc, right eye

**ESTIMATED BLOOD LOSS:** Minimal

**SPECIMEN REMOVED:** None

**SUMMARY OF THE OPERATION:** The risks, benefits, and alternatives were discussed and informed consent was obtained. The patient was dilated in the preoperative holding area where the operative eye was appropriately marked. The patient was rolled to the operating room in the supine position where LMA was begun by the anesthesia team without difficulty. The operative

W. M. Holbrook, M.D.
Clinical Director
FCI/ FPC Talladega, AL

2/6/18

Page 1

02/02/2018   16:45                                                (FAX)                    P.005/005

| | | healing<br>- will have pt reduce V/T to TID on Sunday, then return on Monday or Tuesday for repeat ASE, continue taper if improved<br>- pt counseled to notify prison promptly if symptoms worsen for urgent repeat exam<br><br>2. SS Retinopathy OU s/p TRD repair OD, PRP OU<br>  - macula f/a, scattered gliosis/fibrosis OD<br>  - good PRP to arcades OU<br>  - no NV<br>  - monitor |
| | Plan | Return in 3-4 days with Robert Wann MD PGY 2 for ASE |
| | | |
| | | |

**Follow up:**

| Status | Diagnosis | Eye | Followup |
|--------|-----------|-----|----------|
| ordered | | | Return in 3-4 days with Robert Wann MD PGY 2 for ASE |

*[signature]*

_____

Signature:  Wann MD, Robert

*Provider:*

Wann, Robert  01/26/2018 5:35 PM

Supervising Physician Attestation:

Patient was seen on subspecialty rounds and treatment plan formulated as documented in resident note.

*[signature]*

_____

Signature: Read MD, Russell

Document generated by:  Robert Wann  01/26/2018

Woods, Reginald   000002699543 ████████ 01/25/2018 09:45 AM Page: 4/4

02/02/2018    16:45                                                    (FAX)                    P.004/005

Lens:
      **OD**    trace cell

      **OD**    PC IOL

## Fundus Examination

Vitreous:
      **OD**    scattered vitreous heme

Optic Nerve:
      **OD**    inferior gliosis, pink

Macula:
      **OD**    flat, scattered fibrosis/gliosis

Retinal Vessels:
      **OD**    attenuated

Periphery:
      **OD**    PRP to the arcades x 360

Health Maintenance
**IOP Check:** 01/25/2018
**Dilated Exam:** 01/22/2018

Ophthalmology Impression/Plan

| # | Detail Type | Description |
|---|---|---|
| 1. | Assessment | Acute endophthalmitis of right eye (H44.001). |
| 2. | Assessment | Sickle cell retinopathy without crisis (D57.1). |
| 3. | Assessment | Retinal detachment, tractional, right eye (H33.41). |
| 4. | Assessment | Pseudophakia of both eyes (Z96.1). |
|  | Impression | (1) Acute endophthalmitis of right eye: H44.001. (2) Sickle cell retinopathy without crisis: D57.1. (3) Retinal detachment, tractional, right eye: H33.41. (4) Pseudophakia of both eyes: Z96.1. |
|  | Plan | 1. Acute endophthalmitis OD s/p TRD repair/CEIOL 2.5 years ago with two nylon K sutures left in place<br> - s/p AC washout, 25g PPV with Dr McFarland 1/18/18 with intravitreal vanc/ceftaz<br> - VA improved from 20/400 to 20/40 PH 20/30 OD, symptoms improving<br> - per op note, suture was very friable and there was a small fragment left embedded deep in the stroma temporally<br> - vitreous cultures NGTD<br> - using fortified vanc/tobra q2hr WA<br> - seen with Dr Bains today, appears stromal opacification underlying <0.5mm epi defect does not extend to the retained suture<br> - Do not think suture fragment needs to be removed<br> - underlying descemet irregularity likely from CEIOL descemet tear, appears stable<br> - Recommend decreasing V/T to QID OU, as K toxicity may be preventing epi defect from |

Woods, Reginald    000002699543 ▮▮▮▮▮ 01/25/2018 09:45 AM Page: 3/4

02/02/2018   16:45                                          (FAX)                    P.003/005

| Dva cc | mod | Dva | sc mod | Dva ph | mod | Dva Other | Nva cc | mod | Nva sc | mod | Nva other | Type |
|--------|-----|-----|--------|--------|-----|-----------|--------|-----|--------|-----|-----------|------|
| 20/40  |     |     |        | 20/30  | -2  |           |        |     |        |     |           |      |

**Va OS**                      **Distance**                          **Near**

| Dva cc | mod | Dva | sc mod | Dva ph | mod | Dva Other | Nva cc | mod | Nva sc | mod | Nva other | Type |
|--------|-----|-----|--------|--------|-----|-----------|--------|-----|--------|-----|-----------|------|
| 20/20  |     |     |        |        |     |           |        |     |        |     |           |      |

## Intraocular Pressure

IOP Summary:

| Date | Time | OD | OS | Method | Measured by | Dilated | Comment |
|------|------|----|----|--------|-------------|---------|---------|
| 01/25/2018 | 10:23 AM | 18 | 16 | Applanation | Tiffanie Richardson | | |

## Physical Examination
Patient's mood/affect is normal. Patient is oriented to person, place and time.

### External Examinations
Pupils:
- OD     pupils equal, round, reactive, no APD
- OS     pupils equal, round, reactive, no APD

Confrontational Visual Fields:
- OD     confrontation fields full to finger counting
- OS     confrontation fields full to finger counting

Motility:
- OD     EOM is full
- OS     EOM is full

Adnexa:
- OD     adnexa normal
- OS     adnexa normal

Eye Lids:
- OD     lids and lashes normal
- OS     lids and lashes normal

Slit Lamp Examination:

Conjunctiva:
- OD     SCH temporarlly with conj vicryl suture

Cornea:
- OD     small ~.5x.5mm epi defect with underlying opacification which does not extend to the posterior K or to retained sutu Descemet irregularity, likely from CEIOL tear, now attached

Iris:
- OD     normal iris structure and texture

Anterior Chamber:

Woods, Reginald   000002699543 ████████ 01/25/2018 09:45 AM Page: 2/4

 **MEDICINE**

CALLAHAN EYE HOSPITAL

**Operative Note**

eye was then prepped and draped in the usual sterile ophthalmic fashion using 5% Betadine and a sterile eyelid speculum was placed.

The Retina team scrubbed in and the microscope was brought into position. A standard 25-gauge pars plana vitrectomy platform was fashioned. The trocars were placed inferotemporal, superotemporal, and superonasal approximately 3.5 mm posterior to the limbus. Infusion was confirmed to be in the vitreous cavity but was not turned on as a pure vitreous sample was needed. The microvitrector was then inserted through the superotemporal working sclerotomy and used to remove approximately 0.75 cc of fluid from the vitreous cavity. This will be sent for culture and gram stain. The infusion was then reconfirmed and turned on to a pressure of 30 mmHg.

The remaining nylon sutures from the patient's previous cataract extraction and tractional retinal detachment repair approximately 2.5-3 years ago were then removed using tying forceps. There was one temporally that was associated with a corneal ulcer and then one superiorly. Both were very friable and the external pieces were the only areas that could be removed. There is still buried suture but it is within the cornea and should not present any further issues. A 15 degree blade was then used to create a superior corneal paracentesis and an anterior chamber washout was performed using BSS. The vast bulk of the inflammatory debris in the anterior chamber was removed. However, there was a small amount remaining. Provisc was used to fill the anterior chamber. The infusion was clamped and MaxGrip forceps were used to remove the remaining inflammatory debris/hypopyon that was present in the anterior chamber. This improved the appearance of the anterior chamber significantly.

The light pipe and microvitrector were then introduced through the superior working sclerotomies, after hydrating the superior corneal wound and a core and anterior 360 degree vitrectomy was performed under the wide angle viewing Resight system. There was minimal vitreous remaining as the patient had a prior vitrectomy. After removal of some of the inflammatory debris posteriorly, the retina came into better view. The retina appeared attached 360 degrees with laser barricade. There were areas of traction fibrosis previously segmented that were well lasered and barricaded. The retina appeared to have good blood flow overall and was very healthy. There were no areas of macular hypopyon or inflammatory debris accumulating in the inferior retina. Overall there was minimal vitreous debris. We suspect the majority of this problem was anterior.

The Resight was then pulled away. The trocars were removed sequentially and the superior sclerotomies were closed with light pressure with a cotton tip and cautery. These were watertight. The inferotemporal sclerotomy required single 8-0 Vicryl suture to be watertight. Conjunctival cutdown was performed in this area as well to access the sclerotomy. At this time a sub-Tenon's block was given. Approximately 4 cc of a 50:50 mixture of 2% lidocaine and 0.75% Marcaine were given in the inferotemporal sub-Tenon's space. This was then closed with a single 8-0 Vicryl suture. Intravitreal antibiotics were then given, 0.1 cc of intravitreal vancomycin and 0.1 cc of intravitreal ceftazidime were injected. The intraocular pressure was approximately 40 mmHg and the superior corneal paracentesis was then burped to bring the pressure to approximately 25. End injections of Ancef and dexamethasone were placed in the subconjunctival space. The eyelid speculum was removed. TobraDex ointment was placed in the eye. A gentle pressure patch and shield were placed as well.

**NAME:** WOODS, REGINALD
**MRN:** M0272129
Page 2

Feb 02 2018 02:16PM CEH HIM 2053258682                    page 4

 **MEDICINE**

CALLAHAN EYE HOSPITAL

**Operative Note**

The patient tolerated the procedure well without complications and was taken to recovery in stable condition. The patient will be admitted for close observation and aggressive topical antibiotic therapy.

ELECTRONICALLY SIGNED - 01/23/2018 08:40 AM
Andrew McFarland, MD

AM/tp    Job #: 4274271    D: 1/18/2018 05:49 A.M.    T: 1/19/2018 11:37 A.M.

**NAME:** WOODS, REGINALD
**MRN:** M0272129
Page 3

Feb 02 2018 02:16PM CEH HIM 2053258682                              page 5

## Callahan Eye Hospital
## 1720 University Blvd.
## Birmingham, AL 35233
### HEALTH INFORMATION MANAGEMENT

Patient: WOODS, REGINALD      Acct: V001522449          Unit: M0272129
DOB: ▓▓▓▓▓▓▓▓              Loc: SDC                  Room/Bed:
Age/Sex: 46 / M              ADM Status: REG SDC       ADM Date: 01/18/18
Weight: 225 lbs
Height: 5' 11"
Allergies: Ibuprofen

## Callahan Eye Hospital
## 1720 University Blvd.
## Birmingham, AL 35233
### HEALTH INFORMATION MANAGEMENT

Patient: WOODS, REGINALD      Acct: V001522449          Unit: M0272129
DOB: ▓▓▓▓▓▓▓▓              Loc: SDC                  Room/Bed:
Age/Sex: 46 / M              ADM Status: REG SDC       ADM Date: 01/18/18
Weight: 225 lbs
Height: 5' 11"
Allergies: Ibuprofen

## History of Present Illness
### 1st Encounter with Physician:
**Date:** Jan 18, 2018
**Time:** 02:00
**Chief Complaint:**
Pain, decreased VA OD
**HPI**
Duration: 2 days
Location: OD
Severity: 9/10
Progression: Pt with ocular hx below woke up 2 nights ago with sudden sharp pain OD. Since then he noticed progressive worsening of his vision OD, pain, redness, and mucopurulent discharge. VA has now reduced to 20/400 from pt baseline of 20/40. Denies flashes or obvious floaters.
Associated symptoms: see above
Alleviating factor: none
Exacerbating factor: none
Context: 46 yo AAM w/ history below present's w/ sx's above.

PMH: sickle cell
POH: sickle cell retinopathy, PPV OS, CEIOL, TRD repair, PPV OD 9/2015 (Morris)

Physical Exam:
Va: 20/400 OD PHNI, 20/20 OS
Pupils: 3>2 OU, no RAPD
Tp: 24 / 18
EOM full OU
CVF full OU

ASE OD:
External: mild periorbital edema, erythema
Lids/Lashes: moderate lid scurf
Conjunctiva/Sclera: diffuse 3+ injection with ciliary flush, purulent tear film
Cornea: temporal suture from previous CEIOL/PPV/TRD repair (9/2015) has broken with surrounding <1mm area of

PAGE 1 of 4

Feb 02 2018 02:16PM CEH HIM 2053258682                    page 6

## Callahan Eye Hospital
### 1720 University Blvd.
### Birmingham, AL 35233
#### HEALTH INFORMATION MANAGEMENT

Patient: WOODS,REGINALD            Acct:V001522449              Unit: M0272129
DOB: ▓▓▓▓▓▓▓                        Loc: SDC                     Room/Bed:
Age/Sex: 46 / M                    ADM Status: REG SDC          ADM Date: 01/18/18
Weight: 225
Height: 511
Allergies: Ibuprofen

epithelial staining and dense underlying stromal infiltrate extending into the AC.  Superior suture intact.  Scattered
PEEs and mild stromal edema
AC: 10% hypopyon, 4+ cell/flare with fibrous strands surrounding the iris/anterior lens capsule
Iris: flat/round, poor dilation
Lens: in place, poor view 2/2 cell
Anterior vitreous: no view

ASE OS:
External: normal
Lids/Lashes: normal
Conjunctiva/Sclera: white/quiet
Cornea: no staining defect, thin/clear
AC: quiet/deep
Iris: flat/round
Lens: 2+ NS
Anterior vitreous: no cell

Dilated fundus exam (dilated with phenylephrine, tropicamide)
OD- ONH s/p/h, c/d , macula f/a, vessels perfused, vitreous clear, periphery f/a x360
OS- ONH s/p/h, c/d 0.3, macula f/a, vessels perfused, no NV, vitreous with scattered mild old heme, periphery f/a
x360 with 360 PRP laser scars

B-Scan OD: anterior vitritis, some settled inferiorly, small TRD appreciated along posterior pole

Assessment/Plan.
1. Endophthalmitis OD
- source likely from broken suture at temporal wound
- discussed with Dr McFarland/Sapp
- plan for emergent 25g PPV, send for cultures, inject vanc/ceftaz, AC washout
- patient last ate at 3PM
- completed orders, consent, H&P
- patient to be admitted post-op, start IV avelox

2. Hx PPV OS, sickle cell retinopathy
- no active NV, good peripheral laser

3. NVSC OS
- monitor

Patient to be admitted post-op for continue IV antibiotics, monitoring

R.O.S.
Ocular History: Wears Glasses

PAGE 2 of 4

Feb 02 2018 02:16PM CEH HIM 2053258682                              page 7

## Callahan Eye Hospital
## 1720 University Blvd.
## Birmingham, AL 35233
### HEALTH INFORMATION MANAGEMENT

Patient: WOODS,REGINALD          Acct:V001522449          Unit: M0272129
DOB▮▮▮▮▮▮▮▮                       Loc: SDC                 Room/Bed:
Age/Sex: 46 / M                  ADM Status: REG SDC      ADM Date: 01/18/18
Weight: 225
Height: 511
Allergies: Ibuprofen

**Cardiovascular:** No Problems
**Respiratory:** No Problems
**Neurology:** No Problems
**Genitourinary:** No Problems
**Endocrine System:** No problems
**Gastrointestinal:** No Problems
**Musculoskeletal:** No Problems
**Hematology / Oncology / Misc.:** Sickle Cell
**Hematology / Oncology / Misc.:** S-C HEMOGLOBIN TYPE
**Integumentary:** No Problems
**ENT:** No Problems
**Mental Health:** No Problems
**Gynecology:** N/A

**Surgical Hx**
**Ocular Anterior Segment Sx:** IOL Insertion, Laser capsulotomy
**Ocular Posterior Segment Sx:** Vitrectomy
**Gastrointestinal Sx:** Cholecystectomy

**Family Members (first degree)**
**Parents:** 2
**Siblings:** 1
**Children:** 0

**Family HX**
**Family History - Ocular:** None
**Family History:** Diabetes

## EXAM
**Orientation:**
**Mood and Affect Appropriate:** Yes
**Oriented To:** All

**Exam:**
**Slit Lamp Used:** Yes

## Impressions & Plans
**Impression 1:**

**Plan 1:**

**Procedures:**
**Attestation**

PAGE 3 of 4

Feb 02 2018 02:16PM CEH HIM 2053258682                    page 8

## Callahan Eye Hospital
## 1720 University Blvd.
## Birmingham, AL 35233
### HEALTH INFORMATION MANAGEMENT

Patient: WOODS, REGINALD          Acct: V001522449          Unit: M0272129
DOB: ▮▮▮▮▮▮                        Loc: SDC                  Room/Bed:
Age/Sex: 46 / M                   ADM Status: REG SDC        ADM Date: 01/18/18
Weight: 225
Height: 511
Allergies: Ibuprofen

Prior to performing the listed procedure(s), I attest that I completed the following elements of a time out prior to the procedure: Correct patient, correct site, and correct procedure.

**Physician Notes:**
**Certification Status:** Certified
**Patient Condition:**
**Condition:** Stable

**Chief Complaint:** Foreign Body Sensation
**Visual Acuity**
**Visual Screening Corrected?:** Neither
**Correction Device?:** None
**Right Eye - Visual Acuity:** 20/400
**Left Eye - Visual Acuity:** 20/20

**Social History**
**Do You Smoke?:** No
**Smoking Status:** Never Smoked
**Do You Drink Alcohol?:** Never
**Drug Use:** None

WANN, ROBERT M.D., PGY-2                              Jan 18, 2018 02:46

Electronically signed by:

Signed By:    <Electronically signed by ROBERT M.D. PGY-2 WANN>    01/18/18 0328

PAGE 4 of 4

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: JUNE 24, 2019

7W

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      SOUTHEAST REGIONAL OFFICE

TO  : REGINALD WOODS, 20521-001
      TALLADEGA FCI    UNT: UNIT G    QTR: B01-013L
      565 EAST RENFROE ROAD
      TALLADEGA,  AL 35160


FOR THE REASONS LISTED BELOW, THIS REGIONAL APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.


REMEDY ID      : 973771-R1      REGIONAL APPEAL
DATE RECEIVED  : JUNE 17, 2019
SUBJECT 1      : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU DID NOT PROVIDE A COPY OF YOUR    INSTITUTION
                 ADMINISTRATIVE REMEDY REQUEST (BP-9) FORM OR   A COPY
                 OF THE (BP-09) RESPONSE FROM THE WARDEN.

REJECT REASON 2: YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN
                 10 DAYS OF THE DATE OF THIS REJECTION NOTICE.

M. Benton

**RECEIVED**

JUL 23 2019

WARDEN'S OFFICE
FCI TALLADEGA, AL

Inmate
Received
7-24-19

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: __Woods, Reginald__  __20521-001__  __Beta-A__  __Talladega-FCI__
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL** * Formal Complaint for 8th Amendment violations of "unreasonable delays" and "systemic deliberate indifference" which has to several injuries with the most recent injury resulting in a "Massive" and "very severe eye infection" that required both surgery and hospitalization to treat the infection developed after several days of "sick-call" visits where "doctors" observed a suture protruding through my right eye (from the inside out) an obvious sign of significant damage, however treatment was delayed until it felt like my (eye) was about to explode from the pressure created by the ulcer of infection! I learned of the "optic nerve" scarring during my hospital stay at UAB. * Notice of Federal Tort Claim. * (See) Attachment

__6-7-19__
DATE

__Reginald Woods__
SIGNATURE OF REQUESTER

**Part B - RESPONSE**



RECEIVED
JUN 17 2019
_____ -Scho

DATE                                 REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

DATE                         SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN        PRINTED ON RECYCLED PAPER                        BP-230(13)
                                                          JUNE 2002

REJECTION NOTICE - ADMINISTRATIVE REMEDY

DATE: AUGUST 30, 2019

FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : REGINALD WOODS, 20521-001
      TALLADEGA FCI    UNT: UNIT G    QTR: B01-013L
      565 EAST RENFROE ROAD
      TALLADEGA,  AL 35160

FOR THE REASONS LISTED BELOW, THIS CENTRAL OFFICE APPEAL
IS BEING REJECTED AND RETURNED TO YOU. YOU SHOULD INCLUDE A COPY
OF THIS NOTICE WITH ANY FUTURE CORRESPONDENCE REGARDING THE REJECTION.

REMEDY ID      : 973771-A1      CENTRAL OFFICE APPEAL
DATE RECEIVED  : AUGUST 5, 2019
SUBJECT 1      : MEDICAL CARE - DELAY OR ACCESS TO
SUBJECT 2      :
INCIDENT RPT NO:

REJECT REASON 1: YOU SUBMITTED YOUR REQUEST OR APPEAL TO THE
                WRONG LEVEL.   YOU SHOULD HAVE FILED AT THE
                ▆▆▆▆▆▆▆ REGIONAL OFFICE, ▆▆▆▆▆▆▆
                OFFICE LEVEL. ────────

REJECT REASON 2: CONCUR WITH RATIONALE OF REGIONAL OFFICE ▆▆▆▆▆▆▆
                FOR REJECTION. FOLLOW DIRECTIONS PROVIDED ON PRIOR REJECTION
                NOTICES.

RECEIVED
SEP 10 2019
WARDEN'S OFFICE
FCI TALLADEGA, AL

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Woods, Reginald    20521-001    Beta-A    FCI-Talladega
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL** This is a "Formal Complaint" for 8th Amendment violations of unreasonable delays and deliberate Indifference the previously raised BP-9 and BP-10 complaints are Incorporated by reference. Secondly, this remedy should be awarded the relief of $280,000.⁰⁰ in Full to satisfy the injury and to serve as a deterrent to officials who have used (Misrepresentation) to "reject" my BP-10, thus "blocking" my acess to due process (via) administrative remedy. I suffered a "Life Threatening" infection in my right eye due to the systemic deliberate Indifference of Medical staff. Please reprimand this Medical Department and "AWARD" the pending "(Form.95) tort claim" For the amount Requested $280,000.⁰⁰ in the (Atlanta Region) (See) Estelle v. Gamble, 429 US 99 (1976)

7-30-19
DATE    (See) Farmer v. Brennan, 511 US 825 (1994)    SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED

AUG 05 2019

Administrative Remedy Section
Federal Bureau of Prisons

received on
9-11-19

DATE
ORIGINAL: RETURN TO INMATE

GENERAL COUNSEL
CASE NUMBER: 973771-A1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

DATE    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

UPN LVN    PRINTED ON RECYCLED PAPER    BP-231(13)
JUNE 2002

<u>Regional Administrative Remedies "rejected" by means of "Misrepresentation" are Due Process remedies "not made available to prisoners" and provide grounds for advancing to the next possible (remedy) without any penalty.</u>

It is well settled under federal law that the Administrative Remedy Process <u>must indeed be made available to an aggrieved prisoner.</u> (See) <u>Ross v. Blake</u>, 136 S.Ct. 1850 at 1856

The Supreme Court describes this qualification as follows: "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a single dead-end with officers unable or consistently unwilling to provide relief to the aggrieved inmate. Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. And finally, the same is true when prison administrators thwart inmates from taking advantage of a grievance process through machinations, <u>MISREPRESENTATIONS</u>, or intimidation. Such <u>INTERFERRENCE</u> with an inmate's pursuit of relief <u>renders the administrative process unavailable</u>.

In plain and unambiguous terms this is nothing more than an advanced legal stratagem with the purpose of gaining an unfair legal advantage (through a falsely imposed time-bar) and to deny me my right to due process and relief from my grievances through the administrative remedy procedures.

If this misrepresentation had occurred only once I could have easily written it off as an honest mistake, but for the same "trick" to be used within two days of each other on the responses to (reject) both remedies is nothing more than misrepresentation, treachery, and strategic guise being used to extend the abuses of my complaints even further and thus adding to my pain and suffering. Please reprimand these actions immediately. Please grant the relief being requested immediately.

## Attachment - A

· TRULINCS 20521001 - WOODS, REGINALD - Unit: TDG-B-A

------------------------------------------------------------------------------------------------

FROM: 20521001
TO: Camp Administrator
SUBJECT: ***Request to Staff*** WOODS, REGINALD, Reg# 20521001, TDG-B-A
DATE: 07/24/2019 03:51:01 PM

To: Executive Assistant - Ms. Benton
Inmate Work Assignment: UNICOR

This is a "follow-up" to the conversation that we had (today) in regards to the "rejection notices" being received from the
Regional Office (BP-10 responses) requesting a copy of (institution level BP-9) that is already attached to (both) of the
packages returned to this institution.  Unit Manager Gillman, Secretary Prothro and Secretary Smith both witnessed that both
packages have not been altered and that they contain the "documents" that are being requested by the Regional Office.
Please confer with Unit Manager Gillman so that we can get a Memo done to "correct" this problem which is causing me further
damage due to the unreasonable and unforeseeable delays that they are currently creating without any just cause.
                    Thank you so much for your time.

Here are both of the Administrative Remedy ID numbers:
Remedy ID: 973771-R1  (rec. on 7/24/19)
Remedy ID: 981767-R1  (rec. on 7/22/19

Be Blessed.

## SUPPLEMENTAL UPDATE
## TO THE ORIGINAL (REGIONAL) FORM 95 TORT CLAIM
## AND A RESERVATION OF RIGHTS

### Please update my list of witnesses as follows:

1. **Lt. Dourerty** – was working the night that I returned the Lt.'s Office after having been turned away from medical services several days with a "negligent misdiagnosis" that completely ignored the obvious and rapid change in vision from 20/40 to 20/70 in one single day as well as Dr. Holbrook's admission of not being able to visualize the retina, but refusing to deem it a proper medical emergency. It was due to the massive ulcer of infection that was clouding my vision at that time, that my retina was being obstructed and possibly already detached. Lt. Dourerty was working later on that evening after I was turned away from medical "due the gross medical negligence" of Dr. Holbrook where I entered the Lt.'s Office so that Lt. Dourerty could see the condition of my eye which had the appearance of actually beginning to tear apart from the tremendous amount of pressure being exerted against it from the ulcer of infection. Lt. Dourerty actually thought that my eye appeared ready to explode out of my head. After viewing my condition Lt. Dourerty ordered that RN Horner should examine me immediately! RN Horner's examination revealed that my vision was now at 20/200!

2. **Lt. Sanders** – came into the institution to drive me to UAB Medical Center on the emergency room visit. Lt. Sanders witnessed the condition of my eye as well as the "delays" of being sent to the wrong hospital and being "black-boxed" for over 7 hours

1

during this emergency where I was obviously suffering from the tremendous pain that I was in from the retinal detachment. This clearly added to my "pain and suffering" during this emergency. Lt. Sanders also is a witness to the fact that this is infection was clearly a "life threatening event" because not only was I administered I.V. antibiotics, but an additional mixture of (3) separate (eye-drop) style "antibiotics" were also being administered every hour on the hour for (4) days straight! I was extremely sleep deprived, but it was the only way to save my life from the "gross medical negligence" of the FCI Talladega Health Services Department.

## <u>RESERVATION OF RIGHTS</u>

This is not a (new) tort claim. This is merely a supplemental addition to my list of witnesses. This is also a "reservation of rights" of my additional right to call in independent "expert witness" testimony, but not limited to the witnesses listed above. I hereby reserve my Due Process Rights, but not limited to all State of Alabama and United States Constitutional rights and protections for loss of life, liberty and personal property

Date: 7/19/19

_Reginald Wood_

2





(See) Ross v. Blake, 136 S. Ct. 1850

# ATTACHMENT – B

# "HISTORICAL RECORD ESTABLISHING THE HABITUAL PATTERN OF BASIC INEPTNESS AND [ROUTINE DELAYS] IN MEDICAL TREATMENT"

# ATTACHMENT – B

TRULINCS  20521001 - WOODS, REGINALD - Unit: TDG-B-A

---

FROM: 20521001
TO: Health Services
SUBJECT: ***Request to Staff*** WOODS, REGINALD, Reg# 20521001, TDG-B-A
DATE: 03/16/2019 11:58:16 AM

To: Ms. Garrett / Medical Records
Inmate Work Assignment: Unicor Office

*This is a formal REQUEST for the records related to several visits and procedures performed by the Retina Specialists of Alabama LLC of Birmingham located with the UAB Highlands Medical Center.
Beginning as early as the month of May 2014 to 2017.

I don't need the entire years worth of documents unless it is easier for you to print it that way.
But if you can NARROW your search to the Retina Specialists of Alabama specifically it would save us both much time, energy and it would not waste so much paper.

Thank you for you time.

Mr. Reginald Woods
20521-001

# Retina Specialists of Alabama LLC



Retina

20/40

Optic
Nerve

Macula

Date_____Name_____

Physician Signature_____

## FCI / FPC TALLADEGA

To: Inmate: _Woods, Reginald_

　　　Reg: _20521-001_

　　　Unit: _B01_

From: Dr. M. Holbrook, Clinical Director

Subject: Request for Consultation / Procedure

On _July 17, 2014_ your case was reviewed by the members of the Utilization Review Committee concerning _Ophthalmology_

The Utilization Review Committee has decided on your referral / consult the following:

1. Approved and you will be scheduled for procedure / study / consultant evaluation.

2. The request will be re-evaluated by the Utilization Review Committee after further recommended evaluation has been completed.

3. At this time the requested procedure / consultation / study is not medically necessary. Your condition will continue to be monitored and ongoing treatment provided as necessary.

4. The request has been forwarded to the Region for Approval / Denial.

5. The request has been disapproved by the Region. Disapproved on _____

TRULINCS 20521001 - WOODS, REGINALD - Unit: TDG-B-A

----------------------------------------------------------------------------------------

FROM: Health Services
TO: 20521001
SUBJECT: RE:***Inmate to Staff Message***
DATE: 11/26/2014 01:07:02 PM

The cataract surgery requested in March was disapproved by the region, because it did not meet BOP guidelines. You have been referred back to Dr. Morris for treatment of retinal hemorrhage and that is pending scheduling.

W. Mark Holbrook, MD

>>> ~^!"WOODS, ~^!REGINALD" <20521001@inmatemessage.com> 11/24/2014 6:29 PM >>>
To: Clinical Director, or other Appropriate Authority
Inmate Work Assignment: Education-Library

This is a follow-up inquiry into a "lens-replacement" surgery that had been supposedly rescheduled, in relation to the clouded lens in my right eye.    Please, let me know whether or not this surgery is still in the "post-approval" mode, because I have bee told on two separate occasions that this replacement surgery was approved, and was going to happen, but it never did.
I have been to the retina specialist.
I have been "sized" for the appropriate lens.
I was even taken out for the procedure, but it had been canceled without alerting the institution in a timely manner, so we just drove to the hospital for a surgery that had already been canceled.
All of these examinations and trips occurred months ago.
**It is my understanding that because I was on (SSI) and (Medicare-A) prior to my incarceration that the Medicare-A is still active and in light of this fact, is there any significant security risk involved in passing this procedure back to the "Surgeons" wh performed my initial surgery, or the retina specialist, Due to Dr. Khan's catastrophic "back injury?"**
The institution is not being billed one way or the other for this procedure, and I HAVE NEVER GIVEN ANY SECURITY STAFF ANY PROBLEMS DURING THE MANY TRIPS THAT I HAVE BEEN "ESCORTED" TO THESE HOSPITALS AND CLINICS.
Please, inquire into this matter and let me know why has there such a significant delay in this medical procedure.

Thank You for your time.
Mr. Reginald Woods (20521-001)

TRULINCS  20521001 - WOODS, REGINALD - Unit: TDG-B-A

--------------------------------------------------------------------------------------------------

FROM: 20521001
TO: Health Services
SUBJECT: ***Request to Staff*** WOODS, REGINALD, Reg# 20521001, TDG-B-A
DATE: 06/03/2015 09:17:21 AM

To: Dr. Lawrence
Inmate Work Assignment: Education - Library

This is a follow-up request in relation to my most recent recommendation for "lens replacement surgery" in my right as ordered by Dr. Morris.  This surgery is already over a year and half behind schedule.   Thank You for your time.

FCI / FPC TALLADEGA

To:    Inmate: _Woods, Reginald_

        Reg: _20521-001_

        Unit: _BO1_

From: Dr. M. Holbrook, Clinical Director

Subject: Request for Consultation / Procedure

On _August 7, 2014_ your case was reviewed by the members of the Utilization

Review Committee concerning _Ophthalmology    Retina Specialist_

The Utilization Review Committee has decided on your referral / consult the following:

(1) Approved and you will be scheduled for procedure / study / consultant evaluation.

2. The request will be re-evaluated by the Utilization Review Committee after further
recommended evaluation has been completed.

3. At this time the requested procedure / consultation / study is not medically necessary. Your
condition will continue to be monitored and ongoing treatment provided as necessary.

4. The request has been forwarded to the Region for Approval / Denial.

5. The request has been disapproved by the Region. Disapproved on _____

# FCI / FPC TALLADEGA

To:    Inmate: _____ Woods, Reginald _____

      Reg: _____ 20521-001 _____

      Unit: _____ BO1 _____

From: Dr. M. Holbrook, Clinical Director

Subject: Request for Consultation / Procedure

On _____ August 7, 2014 _____ your case was reviewed by the members of the Utilization Review Committee concerning _____ Ophthalmology  Cataract Surgery _____

The Utilization Review Committee has decided on your referral / consult the following:

1. Approved and you will be scheduled for procedure / study / consultant evaluation.

2. The request will be re-evaluated by the Utilization Review Committee after further recommended evaluation has been completed.

3. At this time the requested procedure / consultation / study is not medically necessary. Your condition will continue to be monitored and ongoing treatment provided as necessary.

4. The request has been forwarded to the Region for Approval / Denial.

5. The request has been disapproved by the Region. Disapproved on _____

TRULINCS 20521001 - WOODS, REGINALD - Unit: TDG-B-A

---

FROM: 20521001
TO: Health Services
SUBJECT: ***Request to Staff*** WOODS, REGINALD, Reg# 20521001, TDG-B-A
DATE: 07/08/2015 02:29:53 PM

To: Dr. Lawrence
Inmate Work Assignment: Education - Library

This is a follow-up on my most recent consultation and recommendation for "cataract removal" surgery in my right eye. This process has been "put-off," "delayed" and "rescheduled" for one time too many and to be honest....I am growing concerned ,because this eye has progressively gotten worse that my (right) eye will begin to become lazy due to the overcompensation of my left eye and my brain working "in concert" to provide me with a clear field of vision. The delays in getting this surgery done are completely unreasonable and are serving NO logical institutional purpose. This is beginning to effect my Quality of Life, please do what you can to expedite this procedure, because it is way overdue.
PLEASE CORRECT THIS UNREASONABLE DELAY IN TREATMENT.

Thank You For Your Time.

REGINALD WOODS
(20521-001)

TRULINCS 20521001 - WOODS, REGINALD - Unit: TDG-B-A

---------------------------------------------------------------------------------------------

FROM: Health Services
TO: 20521001
SUBJECT: RE:***Inmate to Staff Message***
DATE: 07/16/2015 07:32:02 AM

Mr. Woods,
Your consult was approved and has been scheduled.
Dr. Rhynes, HSA

>>> ~^!"WOODS, ~^!REGINALD" <20521001@inmatemessage.com> 7/15/2015 8:55 AM >>>
To: Dr. Grimes
Inmate Work Assignment: Education Library

This is a follow-up and a general reminder of our most recent conversation regarding the unreasonable delays in treatment concerning my previously scheduled "lens replacement" surgery. This surgery is long overdue. Additionally, I have run the entire gauntlet of being examined time and time again. I have been measured for the correct size lens. I have been to the "retina specialist" on at least three different occasions and this surgery has been the recommended course of treatment for my condition, as well as some additional corrective measures that can be performed simultaneously with the "lens replacement" procedure itself. I fully understand the protocols of security which demand that I cannot be told when procedure will occur, however there is absolutely nothing wrong with assuring me that this procedure will be scheduled as soon as the institution can reasonably do so without disturbing the orderly running of the institution.
Dr. Grimes, again thank you in advance for your time and efforts in facilitating this so desperately needed procedure.

Mr. Reginald Woods
(20521-001)

## FCI / FPC TALLADEGA

β0l-012L

To:    Inmate: Woods, Reginald

Reg:    2 0521-001

Unit:    Camp 4 Dorm

**From: Dr. M. Holbrook, Clinical Director**

Subject: Request for Consultation / Procedure

On    8/14/15    your case was reviewed by the members of the Utilization

Review Committee concerning    Ophthamology

The Utilization Review Committee has decided on your referral / consult the following:

1. Approved and you will be scheduled for procedure / study / consultant evaluation.

2. The request will be re-evaluated by the Utilization Review Committee after further recommended evaluation has been completed.

3. At this time the requested procedure / consultation / study is not medically necessary. Your condition will continue to be monitored and ongoing treatment provided as necessary.

4. The request has been forwarded to the Region for Approval / Denial.

5. The request has been disapproved by the Region. Disapproved on _____

TRULINCS 20521001 - WOODS, REGINALD - Unit: TDG-B-A

-----------------------------------------------------------------------------------------------------

FROM: Health Services
TO: 20521001
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/15/2015 10:47:02 AM

I do not have his full consult back. However, we did get the preop orders that he sent. If you do not want to have him do the surgery, you need to come to medical and sign a refusal for him doing the surgery, as it has already been scheduled. Once I see his full note, we can determine if you need to be seen at the eye foundation. If not recommended otherwise, we use the doctors per the CCS contract. If you choose to wait to be seen by someone else, it will definitely lead to a delay in having the procedure performed.
W. Mark Holbrook, MD

>>> ~^!"WOODS, ~^!REGINALD" <20521001@inmatemessage.com> 8/14/2015 2:39 PM >>>
To: Dr. Rhynes
Inmate Work Assignment: Education - Library

This is a follow-up to "several previous requests" in relation to the multiple conditions present in my eye and the substantial delays involved that have now resulted in a "heightened" degeneration of the right eye where the lens (itself) is now "stuck or joined together" with my pupil, along with several other areas in need of surgical repair.

Dr. Kazi, basically told me in no uncertain terms that this type of surgery is a little bit beyond the scope of his normal area of expertise, meaning that he could not repair the other areas (simultaneously) and that these damaged areas would be left unaddressed and unattended which would basically send me back to Dr. Morris again after this procedure is over.
Dr. Kazi only has the ability to perform a "lens replacement" surgery.
(Please review the records...I have retina and macula problems as well that need to be addressed immediately...please check into this situation personally.. my eyes are in your hands!)

Would it not make more sense to let the more experienced surgeon handle this procedure, because Dr. Morris has already performed a "vitrectomy" on my left eye (as a referral surgeon called in on behalf of the Callahan Eye Foundation at UAB) and he has the knowledge to perform multiple procedures during one surgery as opposed to putting a "lesser experienced surgeon" outside of his "comfort zone?"
I repeat....that Dr. Kazi admitted this to me personally that "he is not capable of performing any of the other needed treatments" that have all been "substantially delayed" altogether, therefore it stands to reason that the more we keep deferring these other necessary treatments the further these other areas will worsen over time as a result.

In closing, I would like to also add that this previous visit to Dr. Kazi's office was the very first consult were Dr. Kazi was able to personally "evaluate" my condition and to be completely "honest" with you he did not sound very sure of himself, in other words he did not sound like he was completely comfortable and at ease with this "critical" of a level surgery.

Dr. Rhynes, I am personally and "HUMBLY" asking you to please look at these records for yourself, because I believe it would make more sense to let the "MORE EXPERIENCED" surgeon finish the work that "HE BEGAN."
(This just makes common sense.)

Thank you so much for your time!

TRULINCS 20521001 - WOODS, REGINALD - Unit: TDG-B-A

--------------------------------------------------------------------------------------

FROM: Health Services
TO: 20521001
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/17/2015 10:42:02 AM

Please come to HSU and sign a refusal today if you do not want him to perform the surgery. Again this will lead to a delay in your getting surgery performed, because it will take time for you to be scheduled with the eye foundation, if that is what Dr. Kaz recommends.

>>> ~^!"WOODS, ~^!REGINALD" <20521001@inmatemessage.com> 8/15/2015 3:57 PM >>>
To: Dr. Rhynes/Dr. Holbrook
Inmate Work Assignment: Education - Library

*I understand that the institution has made this appointment for the lens replacement surgery, but according to the evaluation and the admission of Dr. Kazi in relation to the full "condition" of my right eye in which (Dr. Kazi) made it abundantly clear that he was not qualified to fully repair my right due to the condition of the retina and macula regions of my right eye.

With this information and this certain knowledge, I personally believe that it would be better to have the more experienced clinic perform this surgery.
(They handle these types of severe conditions regularly and would be better suited for correcting the remaining issues.)

I will sign the refusal as soon as I can, HOWEVER I wish to make it abundantly clear that I AM NOT REFUSING TO HAVE MY RIGHT EYE SURGICALLY REPAIRED, BUT I AM REFUSING TO GAMBLE WITH MY EYESIGHT IN THE HANDS OF A "LESSER EXPERIENCED SURGEON" WHO HAS TOLD ME THAT HE COULD NOT FINISH THE JOB!

Dr. Kazi is simply not qualified for this serious of an eye condition and I BELIEVE HIM!
I WILL BE SIGNING THE REFUSAL...BUT I STILL WISH TO HAVE MY EYESIGHT "CORRECTED!"
(PLEASE CHECK YOUR RECORDS...MY PREVIOUS CONSULT WAS WITH THE "RETINA SPECIALIST" ...NOT DR. KAZI)

TRULINCS 20521001 - WOODS, REGINALD - Unit: TDG-B-A

---------------------------------------------------------------------------------------------------

FROM: Health Services
TO: 20521001
SUBJECT: RE:***Inmate to Staff Message***
DATE: 08/17/2015 10:47:02 AM

See my previous response.
W. Mark Holbrook, MD

>>> ~^!"WOODS, ~^!REGINALD" <20521001@inmatemessage.com> 8/16/2015 8:01 AM >>>
To: Dr. Rhynes
Inmate Work Assignment: Education - Library

This is a FORMAL REQUEST - for your moderate intervention in the matter of my retina/macula corrections in my right eye in addition to the scheduled "lens replacement" surgery.   As I have stated in my previous communications, Dr. Kazi has very clearly and "honestly" told me that the full condition in which my eye is in is "completely above" his field of study in relation to the surgery to be performed he stated that he only has experience in the "lens replacement" ONLY!

PLEASE CHECK YOUR RECORDS......THEY SHOULD INDICATE THAT MY LAST (3) CONSULTS (previous to Dr. Kazi) WERE WITH BOTH (LOCAL) DR. KHAN (for 1 visit) AND (2 visits) WITH THE "RETINA SPECIALIST."  (Did not the "retina specialist" also send his pre-operation orders??  and what happened to those orders??  and why were they not approved???) DID NOT (DR. KHAN) REFER ME TO THE "RETINA SPECIALIST?"

Further, this situation has been complicated exponentially since the previous consults because (according to Dr. Kazi) my lens has actually attached itself to my pupil in the right eye which (common sense dictates) would involve an underlying and increased risk of retina damage occurring during this surgery, and again...I say to you that Dr. Kazi has made it clear he is not qualified to correct anything else in the event of such a catastrophe taking place during the procedure.

I DO NOT FEEL THAT THIS IS A "GAMBLE" THAT WE SHOULD BE TAKING WITH MY EYESIGHT.

DR. RHYNES.... "THANK YOU IN ADVANCE FOR YOUR TIME!"